IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LEAGUE OF WOMEN VOTERS OF ILLINOIS, | ) ) ) | |
| *Plaintiff,* | ) ) | Case No. 11-cv-5569 |
| v. | ) ) | |
| PAT QUINN, in his official capacity as Governor of the State of Illinois, and WILLIAM M. McGUFFAGE, JUDITH C. RICE, BRYAN A. SCHNEIDER, CHARLES W. SCHOLZ, JESSE R. SMART, HAROLD D. BYERS, ERNEST C. GOWEN AND BETTY J. COFFRIN in their Official capacities as Members of the Illinois State Board of Elections, | ) ) ) ) ) ) ) ) ) ) | Hon. Elaine E. Bucklo Hon. Diane S. Sykes Hon. Philip P. Simon |
| *Defendants.* | ) ) | |

## FIRST AMENDED COMPLAINT

1. In violation of the First Amendment, the defendant Governor and the Illinois General Assembly have placed Illinois residents into new state legislative districts based at least in part on the partisan viewpoints and opinions such residents are likely to express or that they are likely to hear and receive. The redistricting principles set out in House Resolution 385 and Senate Resolution 249 state that each new district "was drawn taking into account the partisan composition of the District and of the Plan itself." The General Assembly and Governor have unlawfully selected residents to speak, debate, assemble and vote in these districts based upon their political viewpoints and opinions, without safeguards against the misuse of such criteria to regulate or abridge First Amendment rights for partisan ends. The legislative leaders and Governor claim that they have sought to establish "competitive" state legislative districts.

However, there can be a partisan use of "competitiveness" – pursued in some districts and ignored in others – that makes the political system of the State as a whole less responsive to shifts in public opinion. While the League of Women Voters of Illinois supports the idea that "competitiveness" can be a goal, it seeks to bar any redistricting plan that seeks to create a particular balance of viewpoints, without appropriate safeguards against any possible abridgment or curtailment, for partisan ends, of First Amendment expressive activity.

2. Accordingly, since the Governor and General Assembly have adopted a redistricting scheme based on partisan speech and other content-based expressive activity, without any safeguards to ensure the least possible regulation or abridgment of protected speech and expressive activity, plaintiff LWV of Illinois seeks to enjoin the implementation of the 2011 redistricting plan. LWV of Illinois seeks an order requiring the state to replace the redistricting plan, by using an impartial decision-making process to create a new map that either dispenses with content-based criteria or uses them in a neutral and transparent manner, helping ensure such abridgement may only be conducted to serve a legitimate non-partisan government purpose.

## PARTIES

3. Plaintiff League of Women Voters of Illinois (LWV of Illinois) is a membership-based organization with members residing in nearly every legislative district and throughout the State of Illinois. The LWV of Illinois and its members seek to promote public debate and to inform and educate residents of the state on the issues of the day and political and civic affairs.

4. Defendant Patrick Quinn is Governor of the State of Illinois and is sued here in his official capacity.

5. Defendants William M. McGuffage, Judith C. Rice, Bryan A. Schneider, Charles W. Scholz, Jesse R. Smart, Harold D. Byers, Ernest C. Gowen, and Betty J. Coffrin are the individual members of the Illinois State Board of Elections and are sued here in their official capacities.

## JURISDICTION AND VENUE

6. Plaintiff LWV of Illinois invokes the jurisdiction of this Court pursuant to 28 U.S.C. §1343 for this claim under 42 U.S.C. §1983 for violation of the First Amendment. In addition, plaintiff LWV of Illinois seeks a district court of three judges pursuant to 28 U.S.C. §2284, which provides for such a district court of three judges when an action is filed to challenge the apportionment of any statewide legislative body.

## FACTS

### Constitutional Scheme for Legislative Redistricting

7. Article IV, sections 1, 2 and 3 of the Illinois Constitution directs the Illinois General Assembly, in the year following the decennial census, to form 59 Senate and 118 Legislative Districts that are "compact, contiguous and substantially equal in population."

8. The Illinois Constitution does not authorize any other criteria for redistricting other than these objective content-neutral criteria.

9. Article IV, section 3 of the Illinois Constitution also authorizes, when necessary, creation of a Legislative Redistricting Commission. The Commission is composed of eight members, with no more than four representing any political party. The Speaker and Minority Leader of the House each appoint one House member and one non-legislator; the Senate President and Minority Leader similarly each appoint one member of the Senate and one non-legislator to the Commission.

10. If the Commission is unable to agree on a legislative redistricting plan, the Constitution establishes a method by which one group or another may break the deadlock by lottery.

11. The purpose of the Commission is to encourage the principal parties to reach consensus rather than take their chances in a lottery, and to provide a means of decision if consensus is not possible.

### Illinois' Historical Practice of Political Gerrymandering

12. Attempts to achieve a bipartisan or neutral agreement failed to work after the censuses in 1980, 1990, and 2000.

13. In 1981 the Democrats won the lottery resulting in a Democratic-sponsored map.

14. In 1991, the Republicans won the lottery resulting in a Republican-sponsored map.

15. In 2001, in the last round of redistricting prior to the redistricting challenged in this action, the Democrats won the lottery and put in place the Democratic-sponsored map.

16. Political gerrymandering in Illinois has received substantial public criticism.

17. In 2009, the current Governor established the Illinois Reform Commission to investigate and make recommendations to reform the substantial political corruption in the state.

18. On April 28, 2009, the Illinois Reform Commission issued a report that singled out the State's history of gerrymandering: "The Commission's investigation into Illinois' redistricting process revealed a system rife with unfairness, inefficiency and self interest. Specifically, the Commission finds that the State's redistricting process yielded gerrymandered legislative maps and deprives Illinois voters of fair representation. In some cases, our disfigured expansive districts leave representatives hundreds of miles away from their constituents."

19. In the current redistricting process, no lottery took place since the Democratic Party controls both chambers of the General Assembly and the Governor is a Democrat.

20. Consequently, the General Assembly conducted redistricting without the limited and often ineffective safeguards of the Illinois Constitution to ensure that there is a bipartisan agreement on a map that does not favor one political group over another.

**Illinois' Use of Content-Based Restrictions in the 2011 Redistricting**

21. On June 3, 2011, Governor Quinn signed the state legislative redistricting plan into law as Public Act 097-0006, known as "The General Assembly Redistricting Act of 2011."

22. This law consists of tract and district designations with no explanation of the criteria used to create them.

23. However, the State Senate and the House both set forth the principles used in this year's redistricting along with the descriptions of the state legislative districts in Senate Resolution 249 and House Resolution 385, respectively.

24. These resolutions state that criteria other than contiguity, compactness and equality in population were used.

25. As set out in the Senate and House resolutions, the General Assembly also took into account the "partisan composition" of the new districts.

26. For example, Senate Resolution 249 states: "Each of the districts contained in the 2011 General Assembly Redistricting Plan was drawn taking into account the partisan composition of the District and of the Redistricting Plan itself."

27. House Resolution 385 states that each district "was drawn taking into account the partisan composition of the District and of the Redistricting Plan itself."

28. These resolutions were expressly incorporated into Public Act 97-0006.

29. At hearings before the House Redistricting Committee, the chair of the Committee, Majority Leader Barbara Flynn Currie, stated repeatedly that partisan concerns played a role.

30. Specifically, the Majority Leader stated: "Yes, partisanship does play a role in the drawing of the House and Senate districts, but while we believe this plan is politically fair, we don't deny partisan concerns play a role."

31. Furthermore, the Majority Leader stated that in several instances, individual legislators were involved in drawing the lines or boundaries of the districts they currently represent.

32. On June 3, 2011, the Governor signed into law the Legislative Redistricting Act of 2011, without making any changes.

33. On June 3, 2011, upon signing the Legislative Redistricting Act of 2011, the Governor stated that the new state legislative districts were "competitive."

34. While Democratic leaders contend that the maps are competitive, Republican leaders have denied that the maps created under House Resolution 385 and Senate Resolution 249 are "competitive" or constitute anything but traditional partisan gerrymandering.

### Illinois' Use of Content-Based Restrictions Cannot be Justified and Harms Plaintiff's Members

35. Every redistricting plan establishing single-member districts creates a regulation of the time, place, and manner of partisan political speech, and places residents into specific legislative districts.

36. Legislative districts are public forums.

37. As such, every redistricting plan is necessarily a regulation or abridgment of political speech in a public forum and constitutes necessarily some abridgment or limitation of expressive activity protected by the First Amendment.

38. While some abridgment of expressive activity is necessary to establish single-member districts, redistricting based on the content of partisan speech or viewpoints of residents, for a partisan purpose, creates an undue, unnecessary or unjustified abridgment of First Amendment rights, which is not narrowly tailored with appropriate safeguards to serve a legitimate state interest.

39. As set out in the resolutions cited above, the General Assembly took account of the "partisan composition" of the new districts and necessarily created legislative maps that placed residents into districts based on expressive criteria in a manner that was not narrowly tailored with safeguards to serve a legitimate state interest, rather than a particular partisan end.

40. By considering the partisan composition of the districts and the political competitiveness of election campaigns in such districts, the General Assembly is unlawfully attempting to control or influence the kinds of views, opinions and speech that members of the League of Women Voters of Illinois and other state residents placed in those districts are likely to express or hear and receive. Further, the General Assembly is doing so in a manner that is not narrowly tailored with appropriate safeguards to serve a legitimate state interest.

41. Because of the General Assembly's use of the aforementioned methods to control or influence the kind of views that the League of Women Voters of Illinois, its members, and other state residents are likely to hear and receive, there is a significant risk that the General Assembly will become less accountable and responsive to changes in public opinion and less under popular control.

42. Furthermore, such methods of redistricting increase the power and influence of legislative leaders over individual legislators elected by residents of the State, since such individual legislators perceive that legislative leaders can determine significantly their chances for reelection.

43. By increasing the power and influence of legislative leaders of both major parties, such methods of redistricting have an inherent tendency to limit the accountability of legislators to the residents exercising their First Amendment right to petition such representatives for the redress of grievances or otherwise to make known their views.

44. Furthermore, to the extent that viewpoint-based redistricting can limit the accountability of legislators to residents, it limits the ability of residents, including the members of LWV of Illinois, to use the political process to eliminate this method of redistricting by majority rule.

45. Given the risk of such irreparable injury to the political process, and the abridgment of the core political speech that LWV of Illinois, its members, and Illinois residents are likely to hear and receive, there is no reason to allow a redistricting scheme to abridge their expressive activity, except where the government can demonstrate that it has created such districts using methods narrowly tailored to pursue a legitimate state goal and not a partisan end.

**Content-Based Restrictions Are Not Necessary to Enforce the Voting Rights Act**

46. In general, any redistricting plan that is based on speech, opinions, or beliefs of residents is neither a necessary nor appropriate means for compliance with the Voting Rights Act of 1967, 42 U.S.C. §1973, absent safeguards to ensure against misuse for unrelated partisan ends.

47. First, the General Assembly can appropriately use contiguity, compactness and other objective factors to assure that redistricting does not dilute existing minority rights.

48. In addition, the General Assembly can appropriately consider community of interest, socioeconomic status, and linguistic ties to achieve the same purpose.

49. Finally, where necessary to ensure achievement of a legitimate government interest, such as the goal of minority representation, speech-related or content-based criteria may be used, provided that such an abridgment is narrowly tailored with appropriate safeguards. An appropriate safeguard would be afforded by the use of a neutral and independent, non-partisan decision making process in drawing legislative districts.

## COUNT I

### (42 U.S.C. § 1983—Violation of First Amendment)

50. Plaintiff LWV of Illinois incorporates paragraphs 1 through 49 above.

51. Plaintiff LWV of Illinois represents members living in nearly every legislative district of the State.

52. By such acts as set forth above, and by the use of content-based redistricting principles that are set out by legislative fiat, the defendant Governor and Board members have begun to implement or will implement redistricting plans that place residents and LWV of Illinois members into state legislative districts based on the partisan viewpoints of such residents and LWV of Illinois members.

53. By such acts as set forth above, the defendant Governor and Board members have begun to implement or will implement redistricting plans that unlawfully abridge or regulate expressive activity of residents.

54. Accordingly, by such acts as set forth above, the defendant Governor and Board members have begun to act and will act under color of law within the meaning of 42 U.S.C. §1983 to abridge or unlawfully limit the First Amendment rights of residents of this State, by adopting and implementing a redistricting plan that is neither based on neutral, non-speech criteria, nor on content-based criteria narrowly tailored with appropriate safeguards to serve only a legitimate state purpose.

55. By such acts as set forth above, the defendant Governor and Board members have unlawfully acted under color of law, within the meaning of 42 U.S.C. §1983, to deny or deprive members of LWV of Illinois of their rights under the First Amendment.

56. Furthermore, where the defendant Governor and Board members have unlawfully acted under color of law within the meaning of 42 U.S.C. §1983 to deny or deprive other residents of their rights under the First Amendment, LWV of Illinois may bring this action to assert the rights of such residents.

57. Because the use of partisan criteria as set out in the House and Senate resolutions is not discrete and leaves no practical way to sever the lawful from the unlawful parts of the redistricting plan, plaintiff LWV of Illinois seeks an order under 42 U.S.C. §1983 directing the defendant Governor to develop a new process that uses an impartial decision maker or body to propose a redistricting plan created by the application of neutral or content-neutral "principles," or by the application of content-based criteria only to the extent deemed necessary to serve a legitimate state purpose.

58. Such an impartial decision maker or body could be selected by the unanimous consent of ex officio members of the Legislative Redistricting Commission provided by Article IV, section 3 of the Illinois Constitution, or if that is not possible, by action of this Court.

WHEREFORE plaintiff LWV of Illinois prays this Court to:

A. Declare under 42 U.S.C. §1983 and 28 U.S.C. §2201 that by the use of content-based redistricting principles as set out herein and the failure to demonstrate appropriate safeguards to ensure such content-based discrimination was narrowly tailored to serve a legitimate state interest, the defendant Governor and General Assembly have approved, and the members of the State Board of Elections will implement, state legislative maps that deny or abridge the First Amendment rights of the members of plaintiff LWV of Illinois and other residents.

B. Enjoin the defendant Governor and defendant members of the Illinois State Board of Elections, pursuant to 42 U.S.C. § 1983, from implementing the new state legislative maps produced under the aforesaid redistricting principles.

C. Direct the defendant Governor to consult with the General Assembly leadership as appropriate and to develop a new process for developing new state legislative districts through the selection of an impartial decision-maker or body by the ex officio members of the Legislative Redistricting Commission provided under Article IV, section 3 of the Illinois Constitution, or to use some other appropriate process that will ensure the least possible infringement on the First Amendment rights of plaintiff LWV of Illinois, its members, and other Illinois residents based on their political views, opinions, or beliefs.

D. Direct that any process developed under the preceding paragraph have safeguards to avoid dilution of minority voting rights under Section 2 of the Voting Rights Act, 42 U.S.C. §1973, *et seq.*

E.  Direct that any such process developed by the defendant Governor and approved by the Court be submitted for approval by the Illinois General Assembly.

F.  Grant such other relief as may be appropriate including awarding to plaintiff LWV of Illinois its legal fees and costs.

Dated:  September 1, 2011   By:   /s/ Michael P. Persoon
                                                      Michael P. Persoon

Thomas H. Geoghegan
Michael P. Persoon
Despres, Schwartz & Geoghegan, Ltd.
77 W. Washington St.
Suite 711
Chicago, Illinois  60602
(312) 372-2511