**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| LEAGUE OF WOMEN VOTERS OF ILLINOIS, | ) | |
| Plaintiff, | ) | Case. No. 11-cv-5569 |
| v. | ) | Judges Sykes, Bucklo and Simon |
| PAT QUINN, in his official capacity as Governor of the State of Illinois, and WILLIAM M. McGUFFAGE, JUDITH C. RICE, BRYAN A. SCHNEIDER, CHARLES W. SCHOLZ, JESSE R. SMART, HAROLD D. BYERS, ERNEST C. GOWEN and BETTY J. COFFRIN in their Official capacities as members of the Illinois State Board of Elections, | ) | (3-judge court convened pursuant to 28 U.S.C. § 2284) |
| Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT**

## INTRODUCTION

On September 1, 2011, Plaintiff League of Women Voters of Illinois filed a single-count Amended Complaint challenging the validity of Public Act 97-6, the Illinois State redistricting map. In short, Plaintiff alleges that P.A. 97-6 is a political gerrymander in violation of the First Amendment rights of both the League and its members. Specifically, Plaintiff alleges that, because the drafters of P.A. 97-6 took partisan considerations into account in drawing district lines, the map "unlawfully selected residents to speak, debate, assemble and vote in these districts based upon their political viewpoints and opinions" and thus "unlawfully attempt[ed] to control or influence the kinds of views, opinions and speech that [Plaintiff and other citizens] placed in those districts are likely to express or hear and receive." (Am. Complt., ¶¶ 1, 40.)

The Amended Complaint should be dismissed because Plaintiff lacks standing to assert this claim on its own behalf or on behalf of its members. Additionally, the Amended Complaint should be dismissed because it fails to state a claim. First, Plaintiff's claim that the mere consideration of partisan affiliation in the redistricting process provides a basis for invalidating a map has been repeatedly rejected by the Supreme Court. The Supreme Court has explicitly recognized that partisan considerations are an acceptable part of the redistricting process and provide no basis for invalidating a map. *See infra* at pages 6-10. Second, contrary to Plaintiff's conclusory contention that it relies upon to prop up its First Amendment claim, legislative districts are not public fora; nor are redistricting lines content-based speech restrictions. *See infra* at pages 11-13. Finally, Governor Quinn should be dismissed as an improper party-defendant.

## ARGUMENT

### I. Plaintiff Lacks Standing To Sue.

Under Article III, § 2 of the Constitution, federal courts have jurisdiction over a dispute only if it is a "case" or "controversy." *Raines v. Byrd*, 521 U.S. 811, 818 (1997) (internal quotation marks omitted). "This is a 'bedrock requirement.'" *Id.* (quoting *Valley Forge Christian College v. Americans United for Separation of Church & State*, 454 U.S. 464, 471 (1982)). And among its components is standing, which requires a plaintiff to "'allege *personal injury* fairly traceable to the defendant's allegedly unlawful conduct and likely to be addressed by the requested relief.'" *Id.* at 818-19 (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)) (emphasis in original). Plaintiff bears the burden of pleading and proving standing. *Id.* at 818.

Plaintiff claims to be a "membership-based organization" bringing this political gerrymander action on behalf of its members. (Am. Complt., ¶ 3.) An association has standing to sue on behalf of its members if: (1) its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor relief requested requires the participation of individual members. *Hunt v. Wash. State Apple Adver. Comm'n,* 432 U.S. 333, 342-43 (1977).

#### A. Plaintiff's Claim Is Not Germane To Its Purpose.

Plaintiff cannot demonstrate the "germaneness" requirement of the *Hunt* test. By its own declaration, Plaintiff's mission is to "promote public debate and to inform and educate residents of the State on issues of the day and political and civic affairs." (Am. Complt., ¶ 3.) Its organizational mission is not to protect partisan political interests in either the redistricting or the electoral process. While some, maybe even many, of Plaintiff's members may have such an interest, such a goal is not the *unifying* principle of the League of Women Voters any more than

it is the stated purpose of any other non-partisan group. Rather, Plaintiff's interest in the issues raised in the Amended Complaint would simply be a "generalized grievance shared in substantially equal measure by all or a large class of citizens" that "does not warrant the exercise of jurisdiction." *Warth v. Seldin*, 422 U.S. 490, 499 (1975); *see Arizonans for Official English v. Arizona*, 520 U.S. 43, 64 (1997) ("An interest shared generally with the public at large in the proper application of the Constitution and laws will not do" for standing purposes).

Courts have consistently dismissed claims where the allegations of the complaint were not germane to the associational plaintiff's purpose. *See Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. U.S. Dept. of Ag.*, 415 F.3d 1078, 1103-04 (9th Cir. 2005) (dismissing association on standing grounds where association's purpose of promoting trade and marketing for members was not germane to environmental claim raised in lawsuit); *Pacific Northwest Generating Cooperative v. Brown*, 38 F.3d 1058, 1063 (9th Cir.1994) (organizational plaintiff asserting environmental injuries to itself and its employees lacked standing because its organizational purpose was economic, not environmental); *Minnesota Federation of Teachers v. Randall*, 891 F.2d 1354, 1359 (8th Cir.1989) (teachers' union lacked standing under second prong of *Hunt* where its purposes were not germane to tax issues raised in complaint); *California Parents for Equalization of Educ. Materials v. Noonan*, 600 F. Supp. 2d 1088, 1106-08 (E.D. Cal. 2009) (association lacked standing to challenge school board's use of textbooks on grounds that it indoctrinated Christianity and Judaism, where association's purpose was only to promote accurate portrayal of Hinduism in public education).

Of course, in each of the foregoing cases, the organizations that were found to lack standing based on their respective organizational purposes likely had individual members whose personal interests or preferences were germane to the issues raised in the litigation, but that fact

did not confer standing. Thus, because Plaintiff's aim in this lawsuit of eliminating partisan considerations from the redistricting process is not germane to its own stated organizational purpose, it lacks standing to bring this suit on behalf of its members. *Hunt*, 432 U.S. at 342.

**B. Plaintiff Fails To Allege A Particularized Organizational Injury.**

Nor can Plaintiff establish standing in its own right as an organization. Standing requires (1) an injury in fact, an invasion of a legally protected interest which is (a) concrete and particularized, and actual or imminent, and (b) not conjectural or hypothetical; (2) a causal connection between the injury and the conduct complained of; and (3) a likelihood, as opposed to mere speculation, that the injury will be redressed by a favorable decision. *U.S. v. Hays*, 515 U.S. 737, 742-743 (1995). Plaintiff does not allege any particularized organizational injury. It does not allege that, as a result of P.A. 97-6, it will be unable to "promote public debate" or "educate residents of the State on issues of the day and political and civic affairs," the admitted functions of its organization. (Am. Complt., ¶ 3.) Plaintiff does not (and could not) allege that it will be unable to recruit members, or that it will suffer some financial harm.

Rather, Plaintiff alleges that the drawing of district lines on the basis of partisan affiliation injures the views, opinions and speech of its organization, its members, "*and other state residents placed in those districts*." (Am. Complt., ¶ 40 (emphasis supplied).) Plaintiff may be asserting here that every resident in Illinois is "suffering" the same "injury." If so, Plaintiff concedes that its interest is a "generalized grievance shared in substantially equal measure by all or a large class of citizens" not warranting Article III standing. *Warth*, 422 U.S. at 499. Or Plaintiff may be claiming that the "injury" varies by district—anyone who is not a Democrat in a Democrat-majority district, or any non-Republican in a Republican-majority district, is "punished" by P.A. 97-6. Even under this floating definition of partisan "injury," the

Amended Complaint does not allege that Plaintiff, a *non-partisan* organization, suffers that grievance in any particularized manner—likewise demonstrating the absence of standing.[1]

For all of these reasons, Plaintiff lacks standing to sue. The Amended Complaint should be dismissed under Rule 12(b)(1).

## II. The Amended Complaint Fails To State A Claim.

The Amended Complaint does not allege a traditional political gerrymander, where a minority political party complains that the majority party unconstitutionally manipulated district lines at the minority party's expense—a theory that has been rejected by any court that has considered that claim. Instead, Plaintiff asserts that the General Assembly's mere *consideration* of partisan affiliation in redrawing district lines renders it a political gerrymander as to all residents. (Am. Compl., ¶ 40.) In essence, Plaintiff's theory is that partisan considerations should play no role whatsoever in redistricting.

Plaintiff's theory is based on the faulty assertion that "[l]egislative districts are public forums." (*Id*., ¶ 36.) Plaintiff compounds this error by claiming that consideration of political information in the redistricting process constitutes an unconstitutional "content-based" speech restriction. (*Id*., ¶ 57.) To the contrary, the use of partisan considerations in redistricting has been endorsed repeatedly by the U.S. Supreme Court. In fact, as shown below, the use of partisan data not only has been upheld in its own right—even in contexts where partisan concerns predominated and serious injury to a political party was alleged—it has also been cited by the Court as a *defense* to a racial gerrymander claim. It is therefore impossible to imagine that the mere "consideration" of partisan affiliation comes close to stating a cognizable claim.

[1] In at least 18 reported decisions located by undersigned counsel, various branches of the League of Women Voters have been described (usually self-described) as a "non-partisan" organization. *See, e.g.*, *Common Cause of Pennsylvania v. Pennsylvania*, 558 F.3d 249, 260-61 (3rd Cir. 2009). Though the "non-partisan" language is oddly absent from the Amended Complaint (Am. Compl., ¶ 3), presumably Plaintiff will concede its non-partisan status.

**A. Political Considerations Have Long Been Recognized As A Constitutional Redistricting Tool.**

The gist of the Amended Complaint is that the General Assembly's use of political information in the redistricting process renders the product of that process, the redistricting map, constitutionally invalid. The Supreme Court has repeatedly and consistently rejected this very argument: "It would be idle, we think, to contend that any political consideration taken into account in fashioning a reapportionment plan is sufficient to invalidate it." *Gaffney v. Cummings,* 412 U.S. 735, 752-53 (1973). This simple statement recognizes that "'[i]t is not only obvious, but absolutely unavoidable, that the location and shape of districts may well determine the political complexion of the area. District lines are rarely neutral phenomena…. The reality is that districting inevitably has and is intended to have substantial political consequences.'" *Davis v. Bandemer*, 478 U.S. 109, 128-29 (1986) (quoting *Gaffney*, 412 U.S. at 753). In fact, the Supreme Court has gone so far as to declare "that partisan districting is a lawful and common practice…" *Vieth v. Jubelirer*, 541 U.S. 267, 286 (2004) (plurality opinion).

Far from being the nefarious picture Plaintiff paints, "[t]he very essence of districting is to produce a different—a more 'politically fair'—result than would be reached with elections at large, in which the winning party would take 100% of the legislative seats. Politics and political considerations are inseparable from districting and apportionment." *Gaffney*, 412 U.S. at 753.

In fact, not only is the consideration of partisan factors *permissible* in redistricting, but it has been cited as a justification to *uphold* district lines that were alleged to be racial gerrymanders. *See Easley v. Cromartie*, 532 U.S. 234, 241 (2001) (upholding district boundaries drawn along racial lines, finding that district was not racial gerrymander because racial identity was directly correlated with political affiliation, and *politics was the primary factor*); *Bush v. Vera*, 517 U.S. 952, 968 (1996) ("if district lines merely correlate with race because they are

drawn on the basis of political affiliation, which correlates with race, there is no racial classification to justify"). Indeed, the Court's "prior decisions have made clear that a jurisdiction may engage in constitutional political gerrymandering…." *Hunt v. Cromartie*, 526 U.S. 541, 551 (1999) (emphasis in original).

In sum, the Plaintiff's theory that the mere consideration of partisan affiliation as one of many criteria in drawing district lines renders a plan unconstitutional is directly contrary to a substantial body of Supreme Court jurisprudence that expressly permits such considerations as part of the redistricting process. And because redistricting "inevitably has and is intended to have substantial political consequences," *Davis*, 478 U.S. at 129, the adoption of Plaintiff's theory would lead to the invalidation of virtually every redistricting map ever enacted. Simply put, well-established precedent refutes any notion that Plaintiff has stated a cognizable claim.

**B. The Statewide Political Gerrymander Claim Should Be Dismissed.**

Whether Plaintiff is alleging that partisan considerations can *never* constitutionally play a role, even in part, in the drawing of House and Senate districts, or whether Plantiff's theory is simply that P.A. 97-6 went too far in its use of partisan considerations, the Amended Complaint fails to state a claim. This failure is not new to political gerrymander claims, nor is their dismissal. In fact, although political gerrymandering claims have been around since the founding of the country, *Vieth*, 541 U.S. at 274, and were first considered by the Supreme Court 25 years ago, *see Davis*, 478 U.S. 109, no court anywhere in the country has ever invalidated a redistricting plan as a political gerrymander, under the First Amendment or any other ground.

Since *Davis*, over a dozen cases have rejected political gerrymander claims, including several in this Circuit, though none concerned the First Amendment. *See Smith v. Boyle*, 144 F.3d 1060 (7th Cir. 1998); *La Porte County Republican Central Comm. v. Board of Comm'rs of*

*County of La Porte*, 43 F.3d 1126, 1128 (7th Cir. 1994); *Illinois Legislative Redistricting Comm'n v. LaPaille*, 782 F.Supp. 1272, 1276 (N.D.Ill.1992). Notably, the Seventh Circuit rejected a claim very similar to Plaintiff's, though admittedly brought under the Fourteenth Amendment, that the mere use of political considerations by itself was unconstitutional: "A justiciable issue is not presented by a complaint which pleads that political considerations motivated the drawing of certain district lines but does not plead that the populations of the districts were unequal or that the districting was in any way irrational, e.g., the wards lacked compactness." *Russo v. Vacin*, 528 F.2d 27, 30 (7th Cir. 1976).

Twice since *Davis*, the Supreme Court has taken up the political gerrymander claim, in each case rejecting it as failing to state a claim. *See Vieth*, 541 U.S. 267; *League of United Latin American Citizens v. Perry*, 548 U.S. 399 (2006) ("*LULAC*"). *LULAC* did not consider a First Amendment political gerrymander challenge.[2] In *Vieth*, while a First Amendment political gerrymander claim was not asserted, the four-justice plurality rejected the dissent's suggestion that a political gerrymander claim could sound in the First Amendment: "a First Amendment claim, if it were sustained, would render unlawful *all* consideration of political affiliation in districting," which the plurality clearly found to be unacceptable. *Vieth*, 541 U.S. at 294.

Every lower court decision that has considered a political gerrymander challenge grounded in the First Amendment has rejected it. *See Republican Party of N. Carolina*, 980 F.2d at 960 (rejecting First Amendment political gerrymander claim, noting that Equal Protection Clause guarantees equality of vote, while First Amendment is limited to restrictions on ability to participate in electoral process); *Washington v. Finlay*, 664 F.2d 913, 927-28 (4th Cir. 1981)

[2] The Court did, however, uphold the dismissal of a political gerrymander claim based on equal protection, *id*. at 423, despite the lower court's finding that "political gain for the Republicans was 110% of the motivation for the Plan, that it was 'the entire motivation.'" *Session v. Perry*, 298 F. Supp. 2d 451, 472-73 (E.D. Tex. 2004) (*per curiam*), *vacated*, 543 U.S. 941 (2004).

("The first amendment's protection of the freedom of association and of the rights to run for office, have one's name on the ballot, and present one's views to the electorate do not also include entitlement to success in those endeavors"); *Terrazas v. Slage*, 821 F.Supp. 1162, 1174 (W.D. Tex. 1993) (three-judge court) ("[g]errymandering is concerned with dilution of political influence through the manipulation of elective district boundaries, not with other abuses of the electoral process or First Amendment violations."); *O'Lear v. Miller*, 222 F.Supp.2d 850, 860 (E.D. Mich. 2002) (three-judge court) (*per curiam*), *aff'd mem.*, 537 U.S. 997 (2002) ("Partisan gerrymandering by itself, however, does not support either a freedom of speech or a freedom of association claim."); *Duckworth v. State Bd. of Election Laws*, 213 F.Supp.2d 543, 557-58 (D. Md. 2002) (three-judge court), *aff'd on other grounds*, 332 F.3d 769 (4th Cir. 2003) (First Amendment political gerrymander claim failed as a matter of law); *Vieth v. Pennsylvania*, 188 F.Supp.2d 532, 548 (M.D. Pa. 2002) (three-judge court) (plaintiffs failed to state claim for First Amendment right to free association where plaintiffs alleged redistricting plan constituted governmental classification based on political affiliation); *Holloway v. Hechler*, 817 F.Supp. 617, 629 (S.D. W.Va. 1992) (three-judge court), *aff'd mem.*, 507 U.S. 956 (1993) (rejecting plaintiffs' claim that redistricting statute discriminated against voters solely on party affiliation, political beliefs and associations, by chilling public debate, by burdening plaintiffs' rights to associate for political ends and to cast votes effectively and by chilling ability of Republican candidates to raise campaign funds in order to promote recognition); *Pope v. Blue*, 809 F.Supp. 392, 398 (W.D. N.C. 1992) (three-judge court), *aff'd mem.*, 506 U.S. 801 (1992) (finding plaintiffs failed to state a claim when they alleged that redistricting plan had a chilling effect on freedom of speech, limited freedom of association, and violated Petition Clause); *Anne Arundel County Republican Cent. Comm. v. State Admin. Bd. of Election Laws*, 781 F.Supp. 394, 401 (D.

Md. 1991) (three-judge court), *aff'd mem.*, 504 U.S. 938 (1992) ("[n]othing about [the redistricting plan] affects in any proscribed way the plaintiffs' ability to participate in the political debate in any of the … districts in which they might find themselves."); *Republican Party of Virginia v. Wilder*, 774 F.Supp. 400, 405-07 (W.D. Va. 1991) (three-judge court) (denying preliminary injunction on theory that pairing incumbent legislators for partisan reasons burdens voters' freedom of association, infringes on party's right to select candidates, and violates paired legislators' personal rights under First Amendment); *Badham v. Eu*, 694 F.Supp. 664, 675 (N.D. Cal. 1988) (three-judge court), *aff'd mem.*, 488 U.S. 1024 (1989) ("While plaintiffs may be discouraged by their lack of electoral success, they cannot claim that [the redistricting plan] regulates their speech or subjects them to any criminal or civil penalties for engaging in protected activities.").

"[W]here there is no device that directly inhibits participation in the political process, the First Amendment … offers no protection of voting rights beyond that afforded by the [F]ourteenth and [F]ifteenth Amendments." *Washington*, 664 F.2d at 928. Plaintiff, though wisely choosing not to raise a political gerrymander under the Equal Protection Clause, cannot use the First Amendment as an avenue to pursue its goal of eradicating partisan considerations from legislative redistricting. The Amended Complaint should be dismissed.

### C. Legislative Districts Are Not Public Fora, Nor Are Redistricting Lines Content-Based Speech Restrictions.

In an attempt to invoke the highest degree of First Amendment protection, the Amended Complaint is premised on the (incorrect) assertion that "[l]egislative districts are public forums." (Am. Complt., ¶ 36.) This Court need not accept that legal conclusion as true. *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009). By that assertion, Plaintiff presumably does not mean that Illinois's legislative districts are public fora in and of themselves; they are, after all, only

lines on a map. If entire legislative districts are public fora, then every inch of property within the State of Illinois is a public forum, even if privately owned, or even if publicly owned but not traditionally used for the expression of ideas and opinions. That is clearly not the law. *See Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45-46 (1983); *Protect Marriage Ill. v. Orr*, 463 F.3d 604, 606 (7th Cir. 2006) (collecting cases holding that even public facilities are not "public fora" if they are not traditionally used for the exchange of ideas).

Instead, Plaintiff must mean that the districts provide a method of political expression through voting in elections. However, "[t]he ballot is not a traditional public forum for the expression of ideas and opinions, like streets or parks, to which reasonable access must be given to people who want to engage in political and other protected expression." *Protect Marriage*, 643 F.3d at 606. In *Protect Marriage*, plaintiffs claimed that the Illinois statutory scheme regulating advisory referenda violated, among other things, the First Amendment. *Id*. In affirming dismissal of the complaint, the court expressly rejected the notion that the ballot was a public forum deserving of the highest of First Amendment protections. *Id*.

Even more attenuated is Plaintiff's contention that the use of political considerations in the redistricting process constitutes an unconstitutional content-based restriction on free speech. Of course, "[t]o qualify as a content-based 'regulation of speech,' a statute must restrict speech or expressive conduct in the first place." *Initiative and Referendum Institute v. Walker*, 450 F.3d 1082, 1104 (10th Cir. 2006); *see Asociación de Educación Privada de P.R., Inc. v. Echevarría-Vargas*, 385 F.3d 81, 84-85 (1st Cir. 2004). In *Walker*, the Tenth Circuit affirmed the dismissal of a complaint alleging Utah's referendum requirement, which required a super-majority vote for certain types of ballot questions, was a content-based First Amendment violation. In reaching its conclusion, the Court perfectly summarized Plaintiff's argument here: "Under the Plaintiffs'

theory, every structural feature of government that makes some political outcomes less likely than others—and thereby discourages some speakers from engaging in protected speech—violates the First Amendment." *Id*. at 1100. In rejecting this argument, the court concluded simply, "[t]he First Amendment ensures that all points of view may be heard; it does not ensure that all points of view are equally likely to prevail." *Id*. at 1101.

The Amended Complaint alleges that placing voters into districts based on their partisan affiliation (Am. Complt., ¶¶ 39, 52) inhibits the speech of individuals who are not in the partisan majority of a particular district. (*Id*., ¶ 40.) Thus, for example, Plaintiff would claim that placing a Republican in a majority-Democratic district will discourage the disillusioned Republican's speech. One of the myriad problems with this theory is that what constitutes a "Republican" or a "Democrat" is a fluid concept. Under Illinois law, a voter is free to pull a ballot in the Democratic primary in one election and a Republican ballot in the next; the Illinois Election Code contains no restriction on "party-switching" for voters. *See Hossfield v. State Bd. of Elec.*, 939 N.E.2d 368, 372-73 (Ill. 2010) (describing the historical demise of party-switching prohibitions for voters and candidates in Illinois). Of course, that person may also vote in a Democratic primary but vote for Republicans in the *general* election, or vice-versa.

This phenomena of "party-switching" by voters was aptly demonstrated in the 2010 general elections in Illinois, where four congressional districts switched from a Democrat incumbent to a Republican, and where six State House seats formerly held by a Democrat turned over to a Republican, and underscores what should already be clear—that voters are not monolithic or robotically faithful to any particular political party. The notion that a "Democrat" or "Republican" will forever retain those affiliations and will always vote in general elections for

the candidates of their political party is both offensive and belied by official election data. Needless to say, this Court should not embrace a cause of action based on that stereotype.[3]

Moreover, even if Plaintiff's stereotypical view of Illinois voters were true, the Amended Complaint should be dismissed because at best, Plaintiff alleges that Public Act 97-6 will lead to certain inevitable electoral outcomes in each district. Nowhere does Plaintiff allege that any viewpoint or speaker will not be heard; Plaintiff only alleges that their point of view would be unlikely to prevail. "The First Amendment guarantees the right to participate in the political process. It does not guarantee political success." *Republican Party of N. Carolina v. Martin*, 980 F.2d 943, 960 (4th Cir. 1992) (rejecting First Amendment political gerrymander claim).

## III. Governor Quinn Should Be Dismissed From This Lawsuit.

All other defects in the Amended Complaint notwithstanding, Governor Quinn is not a proper party and should be dismissed. Governor Quinn is absolutely immune from suit for his legislative act of signing P.A. 97-6 into law, and he neither implements nor enforces P.A. 97-6.

### A. Governor Quinn Is Absolutely Immune For His Role In Signing P.A. 97-6.

Governor Quinn is absolutely immune from his legislative act of "signing" or "adopt[ing]" P.A. 97-6 (Am. Complt., ¶¶ 21, 32, 54), and should be dismissed. Illinois state actors performing a "legitimate legislative activity" are absolutely immune from suit under 42 U.S.C. § 1983. *Bagley v. Blagojevich*, 646 F.3d 378, 391 (7th Cir. 2011). Signing a bill into law – an "integral step[] in the legislative process" – is a "legitimate legislative activity." *Id.* (quoting *Bogan v. Scott-Harris*, 523 U.S. 44 (1998)); *see also Bogan*, 523 U.S. at 55 ("Petitioner

[3] The State Board of Elections website contains the official 2010 general election results, located at http://www.elections.il.gov/Downloads/ElectionInformation/VoteTotals/2010GEOfficialVote.pdf; *see* pp. 42, 44, 46 and 49 for the results of the 8th, 11th, 14th, and 17th congressional district elections and pp. 89, 91, 93, 100, and 104-05 for the results of State House races in districts 66, 71, 75, 91, 98, and 101. This court may judicially notice these results. *Dudum v. Arntz*, 640 F.3d 1098, 1102 (9th Cir. 2011); *Green Party of Arkansas v. Martin*, 2011 WL 3444561 at *2 & n.6 (8th Cir. 2011). Judicial notice of this information does not convert a motion to dismiss under Fed. R. Civ. P. 12(b) into a motion for summary judgment. *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080-81 (7th Cir. 1997); *Henson v. CSC Credit Services*, 29 F.3d 280, 284 (7th Cir. 1994).

Bogan's . . . signing into law an ordinance also w[as] formally legislative . . ."); *Torres-Rivera v. Calderón-Serra*, 412 F.3d 205, 212-13 (1st Cir. 2005) ("[A] governor who signs into law or vetoes legislation passed by the legislature is also entitled to absolute immunity for that act.") (citing cases). Plaintiff here alleges that Governor Quinn's act of "adopting" or "signing" P.A. 97-6 violates citizens' First Amendment rights; Governor Quinn is absolutely immune from suit for his legislative act of signing the bill into law.

**B. The Governor Is Not A Proper Party, As He Does Not Implement P.A. 97-6.**

Governor Quinn also is not a proper party because Plaintiff has not alleged and cannot allege facts suggesting that Governor Quinn has acted to "implement" P.A. 97-6.

The Supreme Court instructed long ago that a state officer may only be made a party defendant to a suit to enjoin enforcement of an act alleged to be unconstitutional if the officer has "some connection with the enforcement of the act." *Ex Parte Young*, 209 U.S. 123, 155-57 (1908); *Fitts v. McGhee*, 172 U.S. 516, 530 (1899). Indeed, the Seventh Circuit has explained that a plaintiff cannot name the Governor as a defendant if the Governor "has no role to play in the enforcement of the challenged statutes." *Hearne v. Bd. of Educ. of the City of Chicago*, 185 F.3d 770, 776-77 (7th Cir. 1999). *Accord Summit Medical Associates P.C. v. Pryor*, 180 F.3d 1326, 1341 (11th Cir. 1999) ("unless the state officer has some responsibility to enforce the statute or provision at issue, the 'fiction' of *Ex Parte Young* cannot operate").

Accordingly, courts have dismissed claims against state actors who are unconnected to the implementation or enforcement of a challenged statute. *Weinstein v. Edgar*, 826 F.Supp.1165, 1166 (N.D. Ill. 1993) (dismissing claim against governor where governor did "not bear a sufficient connection with the enforcement" of challenged statute); *see also Sherman v. Community Consol. Sch. Dist. 21 of Wheeling Tp.*, 980 F.2d 437, 440-411 (7th Cir. 1992)

(dismissing claim against Illinois Attorney General); *Sierakowski v. Ryan*, No. 98-C-7088, 1999 WL 286290 at *2 (N.D. Ill. Apr. 27, 1999) (dismissing Illinois Attorney General from suit). Here, the State Board of Elections, not Governor Quinn, is charged with "supervis[ing] the administration of the registration and election laws throughout the State," 10 ILCS 5/1A-8(12), and with "prepar[ing] and mak[ing] available to the public a metes and bounds description of the Legislative and Representative Districts created under" P.A. 97-6. P.A. 97-6 § 20(h) (2011). Plaintiff has not alleged and cannot allege facts demonstrating that Governor Quinn is involved in the implementation or enforcement of P.A. 97-6. Thus, Governor Quinn should be dismissed.

WHEREFORE, Defendants respectfully pray that this Honorable Court dismiss the Amended Complaint in its entirety.

Respectfully submitted,

By: /s/ Richard J. Prendergast

One of the Attorneys for Defendants William M. McGuffage, Judith C. Rice, Ryan A. Smart, Harrold D. Byers, Ernest C. Gowen and Betty J. Coffrin

Brent D. Stratton
Chief Deputy Attorney General
Office of the Illinois Attorney General
100 W. Randolph, 12th Floor
Chicago, IL 60601
(312) 814-4499

Richard J. Prendergast
Michael T. Layden
Special Asst. Attorneys General
Richard J. Prendergast, Ltd.
111 W. Washington St., Suite 1100
Chicago, Illinois 60602
(312) 641-0881

David W. Ellis
Special Asst. Attorney General
402 State House
Springfield, IL 62706
(217) 782-3392

Eric M. Madiar
Special Asst. Attorney General
605 State House
Springfield, IL 62706
(217) 782-2156

Michael J. Kasper
Special Asst. Attorney General
222 N. LaSalle St., Suite 300
Chicago, IL 60601-1013
(312) 405-3292

#

Respectfully submitted,

By: /s/ Brent D. Stratton

One of the Attorneys for Defendant Pat Quinn#

Brent D. Stratton
Chief Deputy Attorney General
Office of the Illinois Attorney General
100 W. Randolph, 12th Floor
Chicago, IL 60601
(312) 814-4499

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| LEAGUE OF WOMEN VOTERS OF ILLINOIS, | ) | |
| Plaintiff, | ) | Case. No. 11-cv-5569 |
| v. | ) | Judges Sykes, Bucklo and Simon |
| PAT QUINN, in his official capacity as Governor of the State of Illinois, and WILLIAM M. McGUFFAGE, JUDITH C. RICE, BRYAN A. SCHNEIDER, CHARLES W. SCHOLZ, JESSE R. SMART, HAROLD D. BYERS, ERNEST C. GOWEN and BETTY J. COFFRIN in their Official capacities as members of the Illinois State Board of Elections, | ) | (3-judge court convened pursuant to 28 U.S.C. § 2284) |
| Defendants. | ) | |

**NOTICE OF FILING**

**TO:** SERVICE LIST

PLEASE TAKE NOTICE that on **Thursday, September 8, 2011**, I caused to be filed with the Clerk of the Northern District of Illinois, Eastern Division, **Memorandum of Law in Support of Defendants' Motion to Dismiss Amended Complaint**, a copy of which is served upon you..

/s/ Richard J. Prendergast

**CERTIFICATE OF SERVICE**

Richard J. Prendergast, an attorney, certifies that he caused a copy of the **Notice** and **Memorandum of Law in Support of Defendants' Motion to Dismiss Amended Complaint** to be served upon the following Service List via electronic means, this 8th day of September, 2011.

Respectfully submitted,

By: /s/ Richard J. Prendergast
One of the Attorneys for Defendants William M. McGuffage, Judith C. Rice, Ryan A. Smart, Harrold D. Byers, Ernest C. Gowen and Betty J. Coffrin

Brent D. Stratton
Chief Deputy Attorney General
Office of the Illinois Attorney General
100 W. Randolph, 12th Floor
Chicago, IL 60601
(312) 814-4499

Richard J. Prendergast
Michael T. Layden
Special Asst. Attorneys General
Richard J. Prendergast, Ltd.
111 W. Washington St., Suite 1100
Chicago, Illinois 60602
(312) 641-0881

David W. Ellis
Special Asst. Attorney General
402 State House
Springfield, IL 62706
(217) 782-3392

Eric M. Madiar
Special Asst. Attorney General
605 State House
Springfield, IL 62706
(217) 782-2156

Michael J. Kasper
Special Asst. Attorney General
222 N. LaSalle St., Suite 300
Chicago, IL 60601-1013
(312) 405-3292

Respectfully submitted,
By: /s/ Brent D. Stratton
One of the Attorneys for Defendant Pat Quinn

Brent D. Stratton
Chief Deputy Attorney General
Office of the Illinois Attorney General
100 W. Randolph, 12th Floor
Chicago, IL 60601
(312) 814-4499