# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| LEAGUE OF WOMEN VOTERS OF ILLINOIS, | ) ) ) | |
| *Plaintiff,* | ) ) | Case No. 11-cv-5569 |
| v. | ) ) | |
| PAT QUINN, in his official capacity as Governor of the State of Illinois, and WILLIAM M. McGUFFAGE, JUDITH C. RICE, BRYAN A. SCHNEIDER, CHARLES W. SCHOLZ, JESSE R. SMART, HAROLD D. BYERS, ERNEST C. GOWEN AND BETTY J. COFFRIN in their Official capacities as Members of the Illinois State Board of Elections, | ) ) ) ) ) ) ) ) ) | Hon. Elaine E. Bucklo Hon. Diane S. Sykes Hon. Philip P. Simon |
| *Defendants.* | ) ) | |

**PLAINTIFF LWV-IL's OPPOSITION TO
STATE DEFENDANTS' MOTION TO DISMISS UNDER RULE 12(b)(6), F.R.CIV.P**

Relying on *Citizens United v. Federal Election Commission,* 558 U.S. _, 130 S.Ct. 876 (2010), and *Arizona Free Enterprise Club's Freedom Club v. Bennett,* _U.S. _, 131 S. Ct. 2806 (June 27, 2010), plaintiff League of Women Voters of Illinois (LWV-IL) challenges the State defendants' use of redistricting to "balance" or control viewpoints in state legislative campaigns as a violation of the First Amendment. Illinois House Resolution 385 and Senate Resolution 249, which set out the principles of redistricting, state, respectively: "Each of the districts contained in the 2011 General Assembly Redistricting Plan was draw taking into account the partisan composition of the District and of the Districting Plan itself." The entire districting scheme is tainted by consideration of the partisan views of those moved in and out of the districts.

State legislative leaders such as House Majority Leader Barbara Flynn Currie and Governor Quinn defend this approach and say they were seeking to have "competitive" and "fair" elections. However, under the First Amendment, the Illinois scheme to take account of each District's "partisan composition" and to have "competitive" elections – even if sincere – is not a legitimate government purpose. That is the clear message of the Supreme Court in both *Citizens United* decided in 2010 and in *Arizona Free Enterprise Club's Freedom Club* decided a few months ago.

*Any* government attempt to balance or control electoral speech, even for the sake of a "competitive" election, is a violation of the First Amendment because it seeks to control "the marketplace of ideas." *See Arizona Free Enterprise Club's Freedom Club,* 131 S. Ct. at 2825-

1

26. In drawing up particular districts, the government may not seek to pull out some types of voters and add others because it may not "seek to restrict the speech of some elements of our society in order to enhance the relative voice of others…". *Citizens United,* 130 S. Ct. at 904. Such balancing of partisan activity in electoral campaigns violates the First Amendment for it interferes with the "unfettered exchange of ideas." *Arizona Free Enterprise,* 131 S. Ct. at 2826.

Unlike gerrymandering cases cited by the State defendants, the plaintiff LWV-IL does not claim a "dilution" of the right to vote, or any violation of the right to vote under the Fourteenth Amendment. It brings *no* claim about voting or a voting-related injury as in *Vieth v. Jubelier,* 541 U.S. 267 (2004) or *League of United Latin American Citizen v. Perry,* 548 U.S. 399 (2005). LWV-IL presents instead a First Amendment claim that has never been considered in light of the important and new Supreme Court holdings in *Citizens United* and *Arizona Free Enterprise*, which significantly strengthen the limiting effect of the First Amendment on government regulation of electoral matters.

Significantly, Justice Kennedy, who was the crucial and deciding fifth vote in both *Vieth* and *LULAC*, has urged that the First Amendment may well be the relevant constitutional bar to viewpoint based redistricting. *Vieth*, 541 U.S. at 314 (Kennedy, J. concurring). "After all," he wrote, "these allegations involve the First Amendment interest of not burdening or penalizing citizens because of their participation in the electoral process, their voting history, their association with a political party, or their expression of political views." *Id. See also League of United Latin American Citizens v. Perry*, 548 U.S. at 418 (Kennedy, J., joined by Souter, J., and Ginsburg, J.)

LWV-IL has standing to bring this claim because its members have First Amendment rights to participate in the electoral process without government interference to balance, screen,

or filter the kind of speech they are likely to hear and receive – i.e., to influence the "open marketplace of ideas." *See Citizens United*, 130 S. Ct. at 884. Plaintiff LWV-IL respectfully submits that the State defendants' motion to dismiss under Rule 12(b)(6) for failure to state a claim be denied. Plaintiff agrees, however, that it is appropriate to remove Governor Quinn as an individual defendant to this lawsuit.

## STATEMENT OF FACTS

Like other states, Illinois uses a single member districting scheme and redraws district lines every ten years to reflect changes in population. The Illinois Constitution states that such redistricting shall be based on three neutral criteria – population equality, compactness, and contiguity. However, Illinois has had a history of "one-party" control over redistricting and a reputation for gerrymandering. On April 28, 2009, the Governor's Illinois Reform Commission issued a report that tied such partisan or viewpoint based redistricting with political corruption in the State. "The Commission's investigation into Illinois' redistricting process revealed a system rife with unfairness, inefficient and self interest." Illinois Reform Commission 100-Day Report, p. 53. The Commission also stated: "Behind closed doors, political operatives scrutinize the voting history of constituents to draw boundaries intended to protect incumbents or draw 'safe' districts for either the Democratic or Republican parties." *Id.* at 48.

Following the report of the Illinois Reform Commission, the General Assembly faced political pressure to open up the redistricting process. Hearings were held throughout the state for months. However, the draft map being considered was not made public at the hearings until the weekend before the General Assembly voted to approve the new map and then adjourned. The General Assembly Redistricting Act of 2011 was signed into law on June 3, 2011. The Act creates 59 state Senate districts and 118 state legislative districts.

3

In developing the new districts described in the Act, the State Senate and the House set forth the principles used by the General Assembly in such redistricting. Both Senate Resolution and House Resolution 385 state that in the case of each district, the legislative chamber took account of the "partisan composition" of the district. For example Senate Resolution 249 states: "Each of the districts contained in the 2011 General Assembly Redistricting Plan was drawn taking into account the partisan composition of the District and of the Redistricting Plan itself."

The Governor and House Majority Leader and others defended the districts being drawn up based on "partisan composition" and stated that it was the goal or intent to have "fair" or "competitive" elections. For example, House Majority Leader Barbara Flynn Currie stated: "[This map] will serve the citizens of Illinois well over the next ten years. It's a competitive map. It's a fair map." She further stated: "My own sense is that this is a politically competitive map." In April 2011, Governor Quinn made a public statement calling for a "competitive map" as a condition for his approval. In June 2011, Governor Quinn signed the Act and stated that the new districts were "competitive". In short, while not denying the consideration of the partisan composition of the voters, the defendant legislative leaders and Governor contend that they had the laudable purpose of creating a "fair" and "competitive" map.

At the same time, on at least one occasion, Majority Leader Currie stated that redistricting in this case had a partisan purpose inconsistent with these statements. Specifically she said: "Yes, partisanship does play a role in drawing of the House and Senate Districts, but while we believe this plan is politically fair, we don't deny partisan concerns played a role."

**ARGUMENT**

**I.     State defendants have no legitimate role in seeking to "balance" or "control" electoral speech or partisan activity in state legislative campaigns.**

Under *Citizens United* and *Arizona Free Enterprise*, the Illinois redistricting scheme violates the First Amendment because the State defendants have no legitimate role in seeking to "balance" or "control" electoral speech or partisan activity in state legislative campaigns. These cases foreclose the use of "viewpoint based" redistricting to control, adjust or influence electoral speech or partisan activity in state legislative campaigns on First Amendment grounds. *See Citizens United*, 130 S. Ct. at 898 ("Premised on a mistrust of governmental power, the First Amendment stands against attempts to disfavor certain subjects or viewpoints.") House Resolution 385 and Senate Resolution 249 make clear that the map makers considered the "partisan composition" of every single district, stating that each district "was drawn taking into account the partisan composition of the District and of the Redistricting Plan itself." The state legislative leaders like Barbara Flynn Currie as well as the Governor have stated on the record they just wanted the map to be "competitive" and "fair." However, only a few months ago, in *Arizona Free Enterprise, supra,* the Supreme Court rejected such State interference as illegal and illegitimate under the First Amendment. The Court stated:

> "Leveling the playing field" can sound like a good thing. But in a democracy, campaigning for office is not a game. The First Amendment embodies our choice as a Nation that, whenever it comes to such speech, the guiding principle is freedom – the 'unfettered interchange of ideas' – not whatever the State may view as fair.

*Arizona Free Enterprise*, 131 S. Ct. at 2826 (citation omitted).

Both *Citizens United* and *Arizona Free Enterprise* have a clear message – a state government may not seek to control or balance partisan activity in elections. Under the First Amendment, government cannot set out to "equalize" speech – and of course it cannot use redistricting to drown out one view or the other. This principle goes back to *Buckley v. Valeo*. Indeed, it goes back even farther to cases like *Tornillo v. Florida*, 418 U.S. 241 (1974). But

5

recently, in striking down laws related to the electoral process, the Supreme Court has given this doctrine special force. In *Citizens United*, the Court stated the principle as follows: "The concept that government may restrict the speech of some elements of our society in order to enhance the relative voice of others is wholly foreign to the First Amendment." *Id.* at 904, quoting *Buckley v. Valeo*, 424 U.S 1, 48-49 (1974).

In seeking "fair" or "competitive" elections, the State defendants defend a scheme to do that very thing. Not just in some districts but in every district, the redistricting plan pulls out some citizens and puts in others to ensure the elections will be "fair" or "competitive" or balanced. Republicans and newspaper editorials may scoff at the truth of the claimed purpose, but even if it is true, it is unlawful. On a district by district basis, it is an attempt to suppress "the relative voice" of one partisan viewpoint and enhance the "relative voice" of another. *See Citizens United, supra* The goal may be "equality" of speech, but on a district by district basis, to achieve such "equality," it is necessary for Illinois to "tone down" some speech and "amplify" other speech, to meet the goal of a "fair" or "competitive" election. The result is a government jiggering of the balance of views in every district in the state.

On this Rule 12(b)(6) motion to dismiss, this Court must assume that the government is in fact trying to suppress some speech or favor other speech on a district by district basis. See Compl. ¶¶ 21-34. Furthermore, the state legislative leaders and Governor admit that they are considering the partisan balance in each district and that they are seeking to have "fair" and "competitive" elections. There is more than enough in this complaint to find that at least for purpose of a Rule 12(b)(6) motion, the government is regulating electoral speech for a purpose that the Supreme Court has condemned as unlawful in both *Citizens United* and *Arizona Free Enterprise* – as well as *Buckley v. Valeo* and cases before.

To offer a "short and plain statement" of LWV-IL's complaint: the State defendants have set out to equalize speech, control speech, or tilt in favor of one type of speech over another, in order to have "fair" or "competitive" elections. The First Amendment "has its fullest and most urgent application to speech uttered during a campaign for political office." *Eu v. San Franciso County Democratic Central Comm.*, 489 U.S. 214, 223 (1989) (internal quotes omitted). When a case concerns election-related speech – as the state's rigging of the balance of views does here – the First Amendment applies with special force. *See, e.g. Buckley v. Valeo,* 424 U.S. at 53. "Laws that burden political speech are subject to strict scrutiny, which requires the Government to prove that the restriction further a compelling interest and is narrowly tailored to achieve that interest." *Citizens United*, 130 S. Ct. at 898.

But far from being a compelling purpose, it is not even a legitimate state purpose to regulate or balance speech to have "fair" and "competitive" elections. *See Arizona Free Enterprise,* supra. In the Arizona case, the Supreme Court struck down a state law that sought only to *enhance* speech through a matching fund scheme. *See Arizona Free Enterprise,* 131 S. Ct. at 2819 (explaining that the government's establishment of a *benefit* to publicly-funded candidates imposed a "markedly more significant burden" than the contribution caps struck down in *Davis v. Federal Election Comm'n,* 554 U.S. 724). Arizona increased money to candidates who took public funding if their privately financed opponents raised money above a certain threshold.

Though the Arizona law did not restrict or reduce the speech of the privately funded candidate, *see id*. at 2817 (observing that the speech of the candidates and independent expenditure groups that brought the suit was not directly capped), the Court found this attempt to "even the playing field" to be unlawful under the First Amendment. The Court states:

7

> We have repeatedly rejected the argument that the government has a compelling state interest in "leveling the playing field" that can justify undue burdens on political speech. *See, e.g., Citizens United*, 558 U.S., at __, 130 S.Ct., at 904-905. . . . . . .
>
> "Leveling electoral opportunities means making and implementing judgments about which strengths should be permitted to contribute to the outcome of an election," *Davis, supra*, at 742, 128 S.Ct. 2759—a dangerous enterprise and one that cannot justify burdening protected speech. The dissent essentially dismisses this concern, see *post*, at 2843 - 2844, but it needs to be taken seriously; we have, as noted, held that it is not legitimate for the government to attempt to equalize electoral opportunities in this manner. And such basic intrusion by the government into the debate over who should govern goes to the heart of First Amendment values.

*Arizona Free Enterprise*, 131 S. Ct. at 2825-26.

The Illinois scheme is at least as illegitimate as that struck down in *Arizona Free Enterprise*. At least the Arizona law did not seek to enhance a particular candidate's speech because of the particular partisan content of the message. But the redistricting scheme used here – as set out in the House and Senate resolutions and statements of legislative leaders – does try to balance the partisan viewpoints, the speech that citizens are likely to give or to hear and receive.

Finally, as even defendants seem to recognize, plaintiff LWV-IL is presenting a claim quite different from the voting rights equal protection claims considered in *Vieth v. Jubelier* and *LULAC v. Perry*. Plaintiff LWV-IL does *not* allege a dilution of the right to vote, as in *Vieth* or *LULAC v. Perry*. For purpose of this case, it is admitted that citizens are able to cast *votes*. Indeed, in some respects, this case is virtually the opposite of *Vieth* or *Perry* since the LWV-IL members do not seek to ensure that the state provide an equal opportunity for Democrats and Republicans to be elected. Nor does plaintiff LWV-IL seek to ask this Court to draw a map that is "fair" to Republicans and Democrats. Rather, it is sufficient if this Court requires that State defendants use a process based on neutral criteria – population equality, contiguity and

8

compactness – to draw district lines. Certainly nothing in *Vieth* or *Perry* permits or authorizes under the First Amendment the use of "partisan composition" to affect electoral debate.

Contrary to the claim of State defendants, the LWV-IL does not allege that gerrymandering will lead to certain electoral outcomes. LWV-IL is focused on the injury to speech. See Compl. at ¶¶ 1, 40, and 45. LWV-IL alleges the "abridgment of the core political speech that LWV of Illinois, its members and Illinois residents are likely to hear and receive." Compl. at ¶ 45. That easily distinguishes this case from those cited by State defendants – cases in which the harm was infringement on the right to achieve political success or win elective office. *See Republican Party of N. Carolina v. Martin* (4th Cir. 1992); *Washington v. Finlay*, 664 F.2d 913, 927-28 (4th Cir. 1981). Defendants also quote a number of lower district court cases cursorily suggesting that gerrymandering *per se* is not concerned with First Amendment speech. But every one of these cases was decided before *Citizens United* and *Arizona Free Enterprise*, which have clearly established that a law or regulation may unconstitutionally affect a plaintiff's ability to participate in the political process where it burdens speech by deliberately gaming the playing field. Finally, as stated in the Introduction, Justice Kennedy, the fifth and deciding vote in both *Vieth* and *Perry,* has pointedly stated that the First Amendment may well apply to such partisan gerrymandering, if such a claim under the First Amendment is brought. Plaintiff LWV-IL has brought such a claim.

**II . The use of redistricting by State defendants to control or balance electoral speech unlawfully burdens the First Amendment rights of LWV-IL members and others.**

The First Amendment states "Congress shall make no law… abridging freedom of speech…". Before turning to the harms of viewpoint redistricting, LWW-IL notes that any single member representation scheme – in contrast to a system of electing legislators "at large" – involves some "abridgment" of speech. The very choice to divide up the State of Illinois into

9

single member House and Senate districts "abridges" or diminishes or reduces the scope of speech in electoral campaigns. LWV-IL agrees that such "abridgment" – the kind involved in single member districting – is perfectly lawful under the First Amendment. But it is lawful on the assumption that the State is using neutral criteria, like equality of population, compactness of districts and similar factors. Regulation of even political speech may be lawful if the regulation is based on neutral criteria to promote a legitimate state purpose. *See United States v. O'Brien,* 391U.S. 367 (1968). A single member scheme, for example, promotes accountability of individual legislators to specific groups of citizens in a local district and helps promote local interests. However, even such a neutral "time, place, and manner" regulation must be both "reasonable" and "justified without reference to the content of the regulated speech." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). Here, however, the regulation was explicitly justified with reference to the content of the views of the districts' members.

Redistricting based on the content of political speech is not a legitimate means and achieving equality in the amount of electoral speech is not a legitimate state purpose. *See Arizona Free Enterprise.*[1] Furthermore, as alleged in the complaint, such a scheme makes individual legislators more accountable to the legislative leaders who can determine their chances for re election by the way they divide up the districts. In that respect, such redistricting enhances the power of Illinois legislative leaders and reduces the accountability of individual

---

[1] It is not only in the campaign finance cases that the Court has found a content-based restraint on speech by the government to be a burden, even where it did not directly foreclose speech. In *Miami Herald Publishing Co. v. Tornillo*, 418 U.S. 241 (1974) (cited by *Buckley v. Valeo*, 424 U.S. at 50), the Court was presented with the claim that a statute guaranteeing equal space in newspapers to reply to criticism violated the First Amendment. Rejecting the defense that the statute "did not prevent[] the *Miami Herald* from saying anything it wished," and thus did not amount to a speech restriction, the Court stated that this argument "beg[ged] the core question." Striking down the Florida law as unconstitutional, the Court observed that a governmental restraint "need not fall into familiar or traditional patterns to be subject to constitutional limitations on governmental powers."

legislators to their constituents. For that reason, it is in conflict with the very purpose of single member districting – to increase accountability of legislators to constituents and not to their party leaders.

In *Arizona Free Enterprise,* the Court struck down a law that simply gave a publicly funded candidate additional money to engage in speech. *Id.* at 2817. Significantly, the law did not actually restrict the privately financed candidate from speaking in any way. However, the state's participation in *countering* a particular point of view was identified by the Court as an unlawful burden on First Amendment rights.

Likewise, when the State defendants consider the "partisan composition" of a district in redrawing its lines, and do so to equalize speech, then they are *countering* the expression by LWV-IL members and others citizens who expressed views tilting their districts too far to one side or the other. If too many LWV-IL members or other citizens register as Republicans in one district, the State defendants claim the right to "consider partisan composition" and move in Democratic voters to *counter* the views they are likely to express. That is the logic of such redistricting: if LWV-IL members and other citizens are too persuasive, or register with a particular party, the State defendants claim the right to counter that point of view. Indeed, the State defendants are committed to countering expressive activity that is too successful or that may create an "imbalance" or lack of "fairness" or "competition" in state legislative campaigns.

The fact that the redistricting scheme is not so blatant or crude as other methods does not make it lawful. For example, the State defendants could leave the district lines just as they were in 2001 and give orders for Republicans to physically move out of their residences in these districts and for Democrats to come into replace them. To be sure, no government would dream of attempting such forced relocation, but just redrawing district lines around people without

moving them accomplishes a similar goal. Likewise, the State defendants could not condition the right to hold rallies on the agreement of the sponsors to ensure an equal number of Democrats and Republicans. As Defendant's own case law shows, it would not matter if these rallies were in a public forum or not: it would be equally unlawful under the First Amendment. *See Protect Marriage Ill. v. Orr*, 463 F.3d 604, 606 (7th Cir. 2006) (observing that although the ballot is not a traditional public forum, the state would still be prohibited from imposing ballot access restrictions "jiggered in a way that discriminates against particular advocates or viewpoints."); *see also Georges v. Carney,* 691 F.2d 297, 301 (7th Cir. 1982) (observing that although neutral procedural restrictions on the use of the ballot do not ordinarily implicate free speech rights, the "case would be different" if state action were potentially viewpoint-discriminatory.) The State defendants simply cannot take measures to achieve equality of speech.

Another analogy is the "no solicitation" rule struck down in *Martin v. Struthers*, 319 U.S. 141 (1943). As set out in the complaint, plaintiff LWV members have a right to hear and receive views – to educate themselves on the issues in a campaign – without government interference. If the government is using redistricting to balance viewpoints, it is interfering with the kinds of views citizens are likely to hear and receive. It is seeking to keep out too many Democrats or too many Republicans from "soliciting" their support to one side or the other.

Perhaps by balancing viewpoints, the State defendants may hope to have candidates "moderate" their views or seek out the "center. But that in itself is a government attempt to stifle other ways of looking at the world. If the government in a systematic and intentional way seeks to make opposing positions equally respectable, it is a burden or interference with the First Amendment right identified in *Arizona Free Enterprise Club* – the right of every citizen to take part in an "unfettered interchange of ideas." That is why it is not a legitimate state purpose to

12

amplify some points of view and reduce the volume of others, as the Court denounced in *Citizens United.* It places a burden on this right – a burden that has been denounced by writers like Milton, Mill or Meikeljohn, all of whom agree that a government filter on the views citizens hear and receive in electoral debate is a burden upon the right to flourish as autonomous and independent citizens. The Supreme Court has now shown that absent a legitimate purpose, any burden on this right to take part in the "open marketplace of ideas" is prohibited.

**III.     The League of Women Voters of Illinois has associational standing to bring this First Amendment challenge on behalf of its members.**

LWV-IL meets the three criteria for standing as an association to assert the constitutional rights of its members. These criteria are set forth in *Hunt v. Washington State Apple Advertising Commission,* 432 U.S. 333, 343 (1977). First, the interests at stake – free electoral debate – are germane to the purpose of LWV-IL in promoting and sponsoring such debate. Second, individual LWV members would have standing to bring their own individual First Amendment claims, for the harms set forth in Part II of the Argument above and other reasons. Third, resolving this suit does not require the participation of individual members. *Id. See also Automobile Workers v. Brock*, 477 U.S. 274, 281-90 (1986).

   **1.     Germaneness**

The interests at stake are germane to the purpose of LWV-IL. See the Declaration of LWV-IL President Jan Dorner. As stated in the Declaration of President Dorner, LWV-IL seeks to encourage informed and active participation in government by promoting free and open electoral debate—this is central to its mission. Affidavit, ¶¶ 4, 5, 9. Further LWV-IL has opposed redistricting that seeks to control or distort such electoral debate. While LWV-IL is a non partisan organization, it takes advocacy positions. Since 1993, LWV –IL has taken a strong advocacy position on behalf of redistricting reform. Prior to this action LWV-IL spearheaded

13

the Illinois Fair Map Initiative, the goal of which was to obtain signatures to the "fair map" constitutional amendment to be placed on the ballot in last year's November 2010 election. Among the criteria set out in the amendment was the following: "no district shall be drawn with the intent to favor a political party or incumbent legislator or congressman."

Although the campaign was not successful, LWV-IL has continued its efforts for redistricting reform. While the districts in this case were being redrawn, LWV-IL participated in a statewide coalition to hold legislative leaders in the General Assembly to their pledge that the drawing of state house and state senate lines would be transparent an open to the public. *Id.* LWV-IL held numerous meetings with legislators, wrote letters to Illinois newspapers and put out public information to educate citizens on the need for a fair map. Since 1992 LWV-IL has maintained and still maintains a standing Committee on Redistricting Reform and has received funding from various foundations to continue this work.

President Dorner states in her Declaration: "The General Assembly Redistricting Act of 2011 – by drawing district lines on the basis of partisan affiliation – injures the core function of the League as an organization, including its ability to promote its education and advocacy mission." *Id.* ¶ 26. Indeed, it interferes with the reasons LWV-IL members join LWV-IL in the first place: to promote free and open electoral speech and have an "unfettered interchange of ideas" without government attempts to balance or offset or counter any of those ideas or partisan views.

The State defendants question whether LWV-IL can represent individual LWV-IL members who may assert "partisan" interests. But this is to misconceive the purpose of LWV-IL as well as the interests of LWV-IL members. LWV-IL is a non partisan organization but it consists of members who often have intense partisan engagements. They join LWV-IL precisely

14

because as a non partisan association it seeks to protect the rights of its members and all citizens to have these intense partisan engagements, without the government countering their speech as in *Arizona Free Enterprise.*

Perhaps the State defendants are surprised that even those LWV-IL members who are Democrats are challenging a map drawn up by Democratic leaders. It is true that the gerrymandering suits are usually if not always cases where the Republican party is suing the Democratic party, or vice versa. But the LWV-IL brings this action to represent the interests of partisans and nonpartisans alike in keeping the government out of a position of controlling electoral debate. The fact that a challenge to gerrymandering may come from a non partisan association that represents not just one point of view but all points of view – representing the interests of all citizens of Illinois in free and open debate – may seem novel to the State defendants, but is long overdue.

   2.  **Individual Standing**

Individual LWV-IL members have standing because they suffer the burdens on the right to speak without being "countered" by the government and burdens on the right to hear and receive views without government "filtering" of such views. *See Arizona Free Enterprise Club's Freedom Club, supra*. The State defendants contend this is a mere "generalized" injury. The Supreme Court has frequently rejected this argument. "Standing is not to be denied simply because many people suffer the same injury." *United States v. Students Challenging Regulatory Agency Procedures,* 412 U.S. 669, 687 (1973). Where a harm or burden is real, though widely shared, the Court has found injury in fact. *Fed Election Comm'n v. Akins,* 524 U.S. 11, 23-25 (1998). If it were otherwise, some of the worst constitutional abuses – wide spread violations of speech or democratic rights – could never be addressed. Recently, in *Judge v. Quinn,* 612 F.3d

15

537 (7th Cir. 2010), this Circuit addressed that issue. In that case, two citizens had filed suit to challenge the State's failure to hold an election to fill the Senate vacancy left by the election of Barack Obama as President. While "everyone" lost the right to vote equally, the Court held that it was not a "generalized" injury. The Seventh Circuit panel stated at page 545:

> This case does not present a "generalized grievance" so widely shared that the political process provides a more appropriate remedy for the plaintiffs. See *Federal Election Comm'n v. Akins*, 524 U.S. 11, 23-25, 118 S.Ct. 1777, 141 L.Ed.2d 10 (1998); *Warth v. Seldin*, 422 U.S. 490, 499-500, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). A voting rights claim strikes at the heart of the political process. Where a plaintiff's voting rights are curtailed, the injury is sufficiently concrete to count as an "injury in fact." See, e.g., *Department of Commerce v. U.S. House of Representatives*, 525 U.S. 316, 331-32, 119 S.Ct. 765, 142 L.Ed.2d 797 (1999); *Akins*, 524 U.S. at 23-25, 118 S.Ct. 1777; *Baker* [*v.Carr*], 369 U.S. at 207-08, 82 S.Ct. 691.

Of course, ever since *Baker v. Carr*, the federal courts have frequently found standing to challenge redistricting schemes. Similarly, it would be difficult to justify denial of standing just because the burden on speech or the right to hear and receive views was "general" in nature. In this case, at least as much as in *Judge v. Quinn,* the unlawful violation of the Constitution "strikes at the heart of the political process." *Judge,* 612 F.3d at 545. Furthermore, where the First Amendment is at stake, the federal courts are especially liberal in allowing standing. Indeed, courts frequently allow third party standing to assert the First Amendment rights of others. *See Broadrick v. Oklahoma,* 413 U.S. 601, 611-12 (1973); *Thornhill v. Alabama*, 310 U.S. 88, 97 (1940). Courts accommodate standing for First Amendment claims because speech protected by the First Amendment has "transcendent value to all society." *Gooding v. Wilson,* 405 U.S. 518, 521 (1972).

But most importantly, LWV-IL members here assert a concrete and particularized harm that they themselves have suffered. Redistricting pulls some citizens out of districts and leaves

16

other citizens where they are. Of course there is no right for a citizen to be in any particular district if neutral criteria are used. But where that citizen is being removed to counter or offset the expression of a particular view or allegiance to a party, then that citizen is suffering a burden that is not justified under the First Amendment and will affect citizens in a kaleidoscope of different ways in different districts throughout the State. The redistricting plan, after all, covers 59 senate and 118 house districts. LWV-IL has members living in most of these districts, and although the exact type of impact may vary district by district, all members are affected in one way or another.

The viewpoint based redistricting here places distinct burdens on First Amendment rights of LWV-IL members and other citizens. First, it "counters" the views expressed by some LWV-IL members – whether they be Republicans in districts that are too Republican or Democrats in districts that are too Democratic. Second, it interferes with the kind of debate they would hear and receive if the government did not interfere at all. *See Martin v. Struthers,* 319 U.S. 141. Sometimes the only contested elections take place in the party primaries. There is a different "interchange of ideas" in a district strongly consisting of adherents to one party's views – in one-sided or strongly Democratic or Republican districts, the content of the debate can be quite different, with more "competitive" primary elections than districts where there is an even balance.

Furthermore, there is injury from redistricting itself. While such injury may be acceptable if based on neutral criteria, it is insufferable when caused by the government's content-based discrimination – by government action seeking to change the balance of political forces. LWV-IL members are active citizens by temperament and by personal commitment of resources, or they would not be in LWV-IL. Moving them from one district to another disrupts

17

existing relationships –with candidates, with other activists and advocates, or just with the friends and contacts they have in districts from which they are removed.

Finally, there is a different injury identified in the complaint: the fact that individual legislators become less accountable to the citizens (and activists) who elect them and more submissive to the legislative leaders of the State. Too often, legislative leaders use the power of redistricting to insulate elected officials from criticism and accountability to LWV members and other citizens. See Compl. ¶¶ 43-44.

For purposes of this Rule 12(b)(6) motion, sufficient injury is claimed here to allow this case to go forward. In the now pending case of *Perez et al v. State of Texas et al.,* 11 CA- 360 (U.S. Dist. Ct. Western Dist. of Texas, San Antonio Division), the three judge court upheld the "associational" standing of the Latino Redistricting Task Force based on general allegations of injury, not ascribed to any specific named individual. The three judge court stated in its opinion of September 2, 2011:

> It is true that at the summary judgment stage, to establish associational standing, an organization must name specific members who would be, or have been, directly affected by the allegedly illegal activity and provide affidavits with specific facts supporting its allegations. *Summers*, 129 S.Ct 1151-52: *Lujan*, 504 U.S. at 561. But 'at the pleading stage, general factual allegations of injury resulting from defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim.' *Lujan,* 504 U.S. at 561.

*Perez*, at 19, presented in Radogno, Docket 47-1.

As set forth above, LWV-IL is well able to make "general factual allegations of injury" at the "pleading stage." To the extent the Court may deem it necessary, however, plaintiff LWV-IL respectfully seeks leave to this Court to amend the complaint to identify such injury with more particularity. Moreover, it is unnecessary for individual LWV-IL members to participate in this case. There is no claim for damages here which might require such participation, and

identification of individual members who have been affected by the harm can be made at the summary judgment stage, as the three judge court decided recently in *Perez*, *supra.*

## CONCLUSION

For the reasons set forth above, plaintiff LWV-IL respectfully requests that the Court deny this Rule 12(b)(6) motion, or, in the alternative at this initial pleading stage, allow plaintiff LWV-IL leave to amend the complaint.

WHEREFORE, Plaintiff respectfully requests that the State Defendant's Motion to Dismiss be DENIED.

Dated:  September 23, 2011          By:    /s/ Thomas H. Geoghegan
                                           Thomas H. Geoghegan

Despres, Schwartz & Geoghegan, Ltd.
77 W. Washington St.
Suite 711
Chicago, Illinois  60602
(312) 372-2511

## CERTIFICATE OF SERVICE

I, Thomas Geoghegan, an attorney, certify that on September 23, 2011, I caused the foregoing Motion to be served on all counsel of record via the Court's CM/ECF electronic filing.

/s/ Thomas Geoghegan